## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DUMONT AIRCRAFT CHARTER, LLC,

|                            |                                    |
|----------------------------|------------------------------------|
| Plaintiff,                 | CIVIL ACTION NO. 3:22-CV-00572     |
| v.                         | (MEHALCHICK, M.J.)                 |
| JAMES A. VALVANO, et al.,  |                                    |
| Defendants.                |                                    |

## MEMORANDUM

This is a breach of contract action, initiated upon the filing of a complaint by Plaintiff Dumont Aircraft Charter, LLC ("Dumont") against Defendants James A. Valvano ("Valvano") and 1732 N. Main Avenue, LLC (the "LLC") (collectively, "Defendants") on April 20, 2022, seeking a judgment against Defendants for the sums owed under a promissory note in the amount of $363,590.30, as of March 31, 2022. (Doc. 1). Presently before the Court is Defendants' motion to dismiss the complaint and compel arbitration, or, in the alternative, to dismiss Dumont's claim for punitive damages. (Doc. 25). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 21). For the following reasons, the parties will be compelled to arbitrate all claims contained in the complaint and this case will be stayed pending the final outcome of arbitration proceedings.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Dumont initiated this action on April 20, 2022, by filing a complaint against Defendants, seeking to enforce a promissory note signed by Valvano in favor of Dumont and to foreclose on a mortgage granted by the LLC to secure the debt owed. (Doc. 1). Dumont

filed affidavits of service of personal service on May 23, 2022, attesting that Valvano was served on May 11, 2022, and the LLC was served on May 12, 2022. (Doc. 4; Doc. 5). On June 3, 3033, Dumont filed a request for entry of default. (Doc. 6; Doc. 8). On June 7, 2022, default was entered by the Clerk of Court in favor of Dumont and against Defendants. (Doc. 7). On June 10, 2022, Defendants entered notices of appearance. (Doc. 9; Doc. 10). On June 21, 2022, Defendants filed the motion to set aside the entry of default, as well as a brief in support. (Doc. 12; Doc. 13). On September 26, 2022, the Court granted Defendants' motion and set aside the entry of default, and directed Defendants to answer or otherwise respond to Dumont's complaint. (Doc. 22; Doc. 23).

On October 25, 2022, Defendants filed the motion to dismiss the complaint and compel arbitration, as well as a brief in support. (Doc. 25; Doc. 26). On October 13, 2022, Dumont filed a "praecipe to correct complaint," requesting that the Clerk of Court "[k]indly delete paragraph 46 of the Complaint which was included in error."[1] (Doc. 27). On October

---

[1] Defendants argue that Dumont's praecipe is improper because there is no Federal Rule of Civil Procedure that permits such a request to challenge allegations in a complaint. (Doc. 31, at 3 n.1). Defendants correctly state that the proper method to change allegations in a complaint is to file an amended complaint pursuant to Rule 15, which Dumont could have done as a matter of course within twenty-one (21) days of the filing of Defendants' motion to dismiss. (Doc. 31, at 3 n.1). For this reason, the Court will construe Dumont's praecipe as a motion to strike paragraph 46 of the complaint, which states: "Valvano breached the Settlement Agreement with Dumont, as set forth in detail above." (Doc. 1, ¶ 46).

Federal Rule of Civil Procedure 12(f) generally governs motions to strike pleadings and provides, in part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rulings on motions to strike rest in the sound discretion of the court. *N. v. Susquehanna Univ.*, No. 4:18-CV-1384, 2019 WL 1877166, at *1 (M.D. Pa. Apr. 26, 2019) (citing *Von Bulow v. Von Bulow*, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987)). The typographical corrections proposed by Dumont is neither substantive nor potentially prejudicial. Therefore, the Court will **GRANT** Dumont's motion and **STRIKE** paragraph 46 from the complaint. (Doc. 27).

27, 2022, Dumont filed a brief in opposition to Defendants' motion to dismiss and in support of an application to stay the action pending the completion of arbitration. (Doc. 29). On November 9, 2022, Defendants filed a response to Dumont's application to stay and a reply brief in support of its motion to dismiss. (Doc. 30; Doc. 31). On November 15, 2022, Dumont filed a reply brief in support of its application to stay. (Doc. 32).

This action arises from Valvano's alleged breach of a certain $400,000.00 promissory note (the "Promissory Note"), which was part of a settlement agreement ("Settlement Agreement") between Dumont and Defendants, for a loan advanced by Dumont to enable Valvano to pay off a bank loan that Defendants owed and for which they were in default. (Doc. 1, at 3-7). In the Settlement Agreement, the parties settled four pending lawsuits, all arising from Valvano's failure to pay Dumont for a debt he incurred in connection with Dumont managing Valvano's business aircraft: (1) *VGH Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-734 (M.D. Pa. Apr. 25, 2017); (2) *VHG Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-735 (M.D. Pa. Apr. 25, 2017); (3) *TSE Global Aviation, LLC v. Dumont Aircraft Charter, LLC*, No. 3:17-CV-624 (M.D. Pa. Apr. 12, 2017); and (4) *Dumont v. TSE Global Aviation, LLC*, No. 1:17-CV-656 (D. Del. May 31, 2017). (Doc. 1, at 4). Under the Settlement Agreement, Dumont loaned Valvano the sum of $400,000.00 (the "Dumont Loan"), which is evidenced by the Promissory Note, signed by Valvano, as Maker, in favor of Dumont, as Payee, and dated May 31, 2018. (Doc. 1, at 4-5; Doc. 1-1, at 2-9; Doc. 1-2, at 2-8). The Promissory Note is secured by a security agreement and mortgage, granted by the LLC in favor of Dumont, with respect to two (2) real properties located in the City of Scranton, County of Lackawanna, Pennsylvania (the "Properties"). (Doc. 1, at 5; Doc. 1-2,

at 3). The mortgage was duly recorded in the Office of the Recorder of Deeds of Lackawanna County on August 29, 2018. (Doc. 1, at 5; Doc. 1-3, at 2).

The terms of the Promissory Note provide for interest on the unpaid principal at the rate of five percent (5%) per annum and require Valvano, as maker, to pay all costs and expenses, including attorneys' fees and costs, incurred by Dumont to collect upon the Dumont Loan. (Doc. 1, at 5-6; Doc. 1-2, at 2). In addition, the Promissory Note requires Valvano to make monthly payments of $5,000, commencing on July 1, 2018, and continuing on the same day of each calendar month thereafter, until the Dumont Loan is repaid in full, with interest and all applicable costs. (Doc. 1, at 6; Doc. 1-2, at 2). The Promissory Note provides that failure to timely repay the Dumont Loan, and to cure said default within ten (10) days after notice of default, is an event of default. (Doc. 1, at 6; Doc. 1-2, at 3). Upon default, the Promissory Note provides that the entire unpaid principal sum of the note, plus all interest accrued thereon, plus all other sums due and payable to Dumont under the Promissory Note, are due and payable immediately, without presentment, demand, notice of nonpayment protest, notice of protest, or other notice of dishonor. (Doc. 1, at 6; Doc. 1-2, at 3-4).

In the complaint, Dumont asserts claims for breach of contract, unjust enrichment/quantum meruit, and mortgage foreclosure. (Doc. 1, at 8-11). Dumont argues Valvano has defaulted in repaying the Dumont Loan because the last payment made by Valvano was on September 14, 2020, and no further monthly payments have been made thereafter. (Doc. 1, at 6). Dumont contends it notified Valvano of his default in repaying the Dumont Loan and that Valvano failed to timely cure his payment defaults to date. (Doc. 1,

at 6). As relief, Dumont seeks (1) judgment against Valvano for all sums owed under the Promissory Note and other loan documents, including the security agreement and mortgage, as well as payment of all costs and expenses, including attorneys' fees and costs, incurred by Dumont to collect upon the Dumont Loan; and (2) judgment of mortgage foreclosure in its favor against Defendants and a foreclosure sale of the Properties subject to the mortgage. (Doc. 1, at 7-8). Dumont claims that as of March 31, 2022, the amount due and payable from Valvano is $363,590.30, which includes the remaining principal in the amount of $337,178.01 and accrued interest in the amount of $26,412.29. (Doc. 1, at 7).

The motion to dismiss and to compel arbitration and the application to stay have been fully briefed and are ripe for disposition. (Doc. 26; Doc. 29; Doc. 30; Doc. 31; Doc. 32).

## II.   STANDARD OF LAW

### A.   MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides a "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through arbitration." *Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, No. 1:15-CV-0174, 2016 WL 1271333, at *2 (M.D. Pa. Mar. 31, 2016) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009)). But, arbitration is still "strictly a matter of contract," so "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). It follows that, "in deciding whether a party may be compelled to arbitrate under the FAA," consideration is first given to "'(1) whether there is a valid agreement to arbitrate between the

- 5 -

parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Sulpizio*, 2016 WL 1271333, at *2 (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)) (citations omitted).

"Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)) (citations omitted). "In interpreting such agreements, federal courts may apply state law, pursuant to section two6 of the FAA," and "generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA." *Harris*, 183 F.3d at 179 (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).

The Third Circuit clarified the standard of review applicable to motions to compel arbitration in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013). "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)', 'the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery.'" *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479, 482 (E.D. Pa. 2011)) (internal citation omitted).

However, review under the Rule 12(b)(6) standard is inappropriate "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," *Guidotti*, 716 F.3d at 774 (quoting *Somerset*, 832 F. Supp. 2d at 482), "or the opposing party has come forth with reliable

evidence that is more than a 'naked assertion that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980)). "Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774. In comparison, when the complaint and documents incorporated therein "facially establish arbitrability but the non-movant" comes forward with sufficient evidence in opposition to the motion to compel to place the question of arbitrability at issue the case falls under the second scenario. *Guidotti*, 716 F.3d at 774. Under both of these scenarios, the motion to compel is to be judged under the Rule 56 standard. *See Guidotti*, 716 F.3d at 774. A "restricted inquiry into factual issues [is] necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate," and the non-movant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774-75 (citations and quotations omitted).

> In short:

> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard . . . .

*Guidotti*, 716 F.3d at 776 (internal quotations and citations omitted).

B.  MOTION TO DISMISS

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions . . . .'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also

need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. St. Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.   DISCUSSION

### A.   TIMELINESS OF DUMONT'S BRIEF IN OPPOSITION

At the onset, the Court addresses the timeliness of the filing of Dumont's brief in opposition to Defendants' motion to dismiss. Dumont's brief in opposition is untimely as it was filed twenty-one days after Defendants filed the motion to dismiss. *See* M.D. LR 7.6 ("Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief. . . ."). Dumont

requests that the Court allow the filing of its brief out of time pursuant to Federal Rule of Civil Procedure 6(b)(1)(B). (Doc. 32, at 2 n.1).

The Court will not strike Dumont's brief in opposition as untimely filed. Under Rule 6(b) of the Federal Rules of Civil Procedure, a district court may extend a deadline "for good cause . . . with or without motion if the court acts, or if a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(2)(A). "[A]ny *post* deadline extension must be 'upon motion made,' and is permissible only where the failure to meet the deadline 'was the result of excusable neglect.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasis in original). The Supreme Court stated that the determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). These circumstances include: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs.*, 507 U.S. at 395.

Here, Dumont filed its brief in opposition seven (7) days after the filing deadline. Dumont claims "[t]he late filing occurred because undersigned counsel consulted [Fed. R. Civ. P.] 7 to determine the response date but simply neglected to review the Local Rules to determine if a different, and shorter, date applied." (Doc. 32, at 2 n.1). The Court finds that there is little danger of prejudice to Defendants, the length of the delay is very limited, Dumont, and there is nothing to suggest that Dumont has acted in bad faith. Though failure to comply with the locals rules of the Court is not a valid excuse, the Court noted the Supreme

Court's instruction that "the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988). Therefore, the Court declines to strike Dumont's brief in opposition to Defendants' motion to dismiss as untimely filed.

B. Motion to Dismiss and to Compel Arbitration

Defendants contend Dumont's complaint should be dismissed because they have been improperly brought before the Court in light of a valid and binding arbitration clause ("Arbitration Clause") in Section 13 of the Settlement Agreement, which incorporate the Promissory Note and Mortgage. (Doc. 26, at 6). Defendants assert that all of Dumont's claims fall within the scope of the Arbitration Clause as they derive from Valvano's purported contractual obligations under the terms of the Settlement Agreement and documents executed to effectuate that Agreement. (Doc. 26, at 8-9). Alternatively, Defendants move to dismiss Dumont's request for punitive damages, arguing that there is no iteration of the law in which Dumont can recover punitive damages for the alleged breach of contract, unjust enrichment, and mortgage foreclosure claims. (Doc. 26, at 10). In opposition, Dumont argues that the Promissory Note and Mortgage are not arbitrable, but it agrees to arbitrate its claims against Defendants pursuant to the terms of the Settlement Agreement. (Doc. 28, at 2). In addition, Dumont asserts that as it agrees to submit its claims to arbitration, Defendants' request to dismiss the punitive damages claim is either moot or must be denied by the arbitrator, and that the instant action must be stayed pending the arbitration pursuant to the FAA. (Doc. 28, at 3-4).

### 1.  Whether Dumont's claims are subject to the Arbitration Clause

Dumont's complaint references and seeks to enforce provisions of the Promissory Note and Mortgage. (Doc. 1). Dumont argues that it is not subject to the Arbitration Clause in the Settlement Agreement because the facts and claims set forth in the complaint seek to enforce a Promissory Note and Mortgage, which contain no arbitration clauses whatsoever and do not "arise under" or "relate to" the Settlement Agreement. (Doc. 29, at 2). Dumont contends the Promissory Note and Mortgage "are each stand-alone, legally binding, documents which should only be enforced based on the terms the parties agreed to as contained in the Note and in the Mortgage." (Doc. 29, at 3).

"[A] party cannot be compelled to arbitrate unless that party has entered into a written agreement to arbitrate that covers the dispute." *Century Indent. Co., 584 F.3d at 526*. Whether a party has done so is determined by applying "ordinary state-law principles that govern the formation of contracts." *Century Indent. Co.*, 584 F.3d at 526 (quotation and citation omitted).

The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (citation omitted). In determining "whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The Arbitration Clause at issue here contain a choice of law provision specifying that they are to be "governed by the laws of the State of Delaware." (Doc. 1-1, ¶ 13) Accordingly, the Court will look to the plain and ordinary

meaning of the Settlement Agreement to determine whether the Promissory Note and Mortgage entered into by Dumont and Valvano incorporate the Arbitration Clause. *See Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del.1992) (noting that "[i]t is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract"); *see also JFE Steel Corp. v. ICI Americas, Inc.,* 797 F.Supp.2d 452, 469 (D.Del.2011) (explaining that, under Delaware law, "[i]f the language of the contract is unambiguous, the Court interprets the contract based on the plain meaning of the language contained on the fact of the document").[2]

The Court finds that, contrary to Dumont's assertion, the Promissory Note and Mortgage were, in fact, executed to effectuate the Settlement Agreement and were duly attached to the Settlement Agreement. The Settlement Agreement, which Dumont concededly did sign, contains an Arbitration Clause that provides for the arbitration of disputes between Dumont and Valvano. (Doc. 1-1, ¶ 13). The Promissory Note and Mortgage, however, do not contain any arbitration provision that would require Dumont to arbitrate disputes with Defendants. (Doc. 1-2; Doc. 1-3). Nevertheless, the Settlement Agreement specifically contemplates that the parties' agreement is "secured by the representations and promises set forth in the Promissory Note, Security Agreement and Mortgage executed simultaneously with this Agreement and attached hereto as Exhibits 2

---

[2] The parties do not address which state's law should apply here. The Court notes that, under Pennsylvania law, the same basic principles of contract interpretation would apply. *See e.g., Doe v. The Trustees of the Univ. of Pennsylvania,* 270 F.Supp.3d 799, 810-11 (E.D. Pa. 2017) ("When the words of a contract are clear and unambiguous, the intent of the parties must be ascertained from the language employed in the contract, which shall be given its commonly accepted and plain meaning.") (citation omitted).

and 3, respectively." (Doc. 1-1, ¶ 2). Therefore, the Court finds that Dumont's claims are subject to the Arbitration Clause because any claims brought under the Settlement Agreement, which consists of three documents: (1) the Settlement Agreement, (2) the Promissory Note, and (3) the Mortgage, are subject to the enforceable Arbitration Clause contained in the Settlement Agreement. (Doc. 1, at 8-12).

## 2. Whether the parties are bound by the valid Arbitration Clause

As noted *supra*, Dumont's breach of contract, unjust enrichment, and mortgage foreclosure claims reference and seek to enforce provisions of the Promissory Note and Mortgage, which incorporate the provisions of the Settlement Agreement. (Doc. 1, at 8-12). The Arbitration Clause contained in Section 13 of the Settlement Agreement provides as follows:

> The validity, interpretation, construction or enforceability of this Agreement shall be governed by the laws of the State of Delaware. All disputes arising under or related to this Agreement, including any breach of this Agreement, shall be submitted to confidential binding arbitration before a single arbitrator under and pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Such arbitration shall be conducted in New Castle County, Delaware. Any application for injunctive relief, whether immediate, temporary, preliminary or permanent, shall be brought exclusively in the arbitration. Judgment on the award entered by the arbitrator may be entered in any court having jurisdiction thereof.

(Doc. 1-1, ¶ 13).

In the instant matter, because Dumont asserts claims concerning the alleged breach of the Promissory Note and Mortgage, which are incorporated into the Settlement Agreement, the complaint is subject the Rule 12(b)(b) standard is applicable here. (Doc. 1); *see Guidotti, 716 F.3d at 774*. "[T]he construction or interpretation of a private contract is usually thought to be a question of state law." *Beazer E., Inc. v. Mead Corp.,* 34 F.3d 206, 212 (3d Cir.1994).

Under Delaware law, express choice of law provisions in contracts are generally given effect. *Hionis Int'l Enterprises, Inc. v. Tandy Corp.,* 867 F. Supp. 268, 271 (D. Del. 1994) *aff'd,* 61 F.3d 895 (3d Cir.1995).

The threshold question is whether the language in the contract is ambiguous. "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Lorillard Tobacco Co. v. Am. Legacy Found.,* 903 A.2d 728, 739 (Del. 2006). Here, the language in the arbitration agreement is clear. The language of the Arbitration Clause broadly covers "[a]ll disputes arising under or related to this Agreement, including any breach of this Agreement," and requires that any such claim shall be resolved by "exclusively" in arbitration. (Doc. 1-1, ¶ 13). The Third Circuit has determined that when an arbitration clause "providing for the arbitration of all matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable." *Medtronic Ave. Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) (compelling arbitration where broad clause governed "any dispute, claim, or controversy arising from or relating to this Agreement or alleged breaches thereof"). For example, in *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress International, Ltd.,* 1 F.3d 639, 642 (7th Cir.1993), the Court of Appeals for the Seventh Circuit interpreted an arbitration clause applying to disputes "arising out of the agreement" as covering "any dispute between the contracting parties that is in any way connected with their contract."

Dumont's claims derive from Valvano's purported contractual obligations under the terms of the Promissory Note and Mortgage, which are documents executed to effectuate the Settlement Agreement. (Doc. 1, at 8-12). The Arbitration Clause language is unambiguous in

stating that "[a]ll disputes arising under or related to this Agreement, including any breach of this Agreement, shall be submitted to confidential binding arbitration." (Doc. 1-1, ¶ 13). Nothing in the ordinary meaning of the Clause compels the conclusion that arbitration is only required if claims are brought under the specific terms of the Settlement Agreement. Accordingly, keeping in mind that doubts as to whether an arbitration clause covers a particular dispute should be resolved in favor of arbitration, the Court finds that this dispute handily falls within Paragraph 13 of the Settlement Agreement. *See  Sulpizio, LLC*, 2016 WL 1271333, at *2.

Accordingly, Dumont's claims are subject to arbitration.

### 3. Whether the complaint will be dismissed or Dumont is entitled to a stay of the action pending arbitration

Defendants move to dismiss the complaint and compel binding arbitration. (Doc. 26, at 9). In opposition, Dumont requests that the Court stay this matter pending the arbitration pursuant to the FAA "so that the Court can assist the parties, if necessary in the prosecution of the arbitration," and "so that, if it is successful in the arbitration, this Court can enforce the money judgment on the Note and order mortgage foreclosure of the Properties." (Doc. 29, at 4). Dumont contends Defendants have set forth no basis for dismissal of the complaint as part of the relief sought in the motion to dismiss and compel arbitration. (Doc. 29, at 4). In response, Defendants argue Dumont is not entitled to stay this matter because it waives its right to arbitrate by filing its complaint in federal court and by disputing that arbitration applied to its claims. (Doc. 32, at 7).

After deciding a motion to compel arbitration, the district court cannot dismiss the case if "one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC.*, 369

F.3d 263, 269 (3d Cir. 2004). Under Section 3 of the FAA, "[a] party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 263 (3d Cir. 2003). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

*Lloyd*, 369 F.3d at 269 (emphasis added).

Accordingly, a district court does not have "discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd*, 369 F.3d at 269. Section 3 of the FAA "clearly states . . . that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded." *Lloyd*, 369 F.3d at 269. If, however, all claims are subject to arbitration, then a court may dismiss the action instead of staying it. *Seus v. John Nuveen Co., Inc.,* 146 F.3d 175, 179 (3d Cir.1998) (stating that an action may be dismissed where all the claims are arbitrable). At that time, a court may also compel arbitration in accordance with the terms of the parties' agreement. *See* 9 U.S.C. § 4.

In support of its request to stay, Dumont cites *Lloyd v. Hovensa*, 369 F.3d 263 (3d Cir. 2004), for the proposition that staying an action is mandatory if a party seeks such relief. (Doc. 29, at 4). In *Lloyd*, the Third Circuit explained that:

> the plain language of § 3 affords a district no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The directive that the Court "shall" enter a stay simply cannot be read to say that the Court shall enter

a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach.

369 F.3d at 269.

In this case, the Court has determined that Dumont's claims are subject to the Arbitration Clause in the Settlement Agreement and that the Arbitration Clause is enforceable. Defendants assert that the case should be dismissed with prejudice and the claims should be referred to arbitration. (Doc. 26, at 9). Dumont consents to refer its claims to arbitration but contends that the proceedings must be stayed rather than dismissed if the Court finds the matter should be referred to arbitration. (Doc. 29, at 4). Given the Third Circuit holding in *Lloyd*, which was reiterated in *Devon Robotics, LLC v. DeVidema*, 798 F.3d 136, 143-44 (3d Cir. 2015), and Dumont's request that the case be stayed, the Court concludes that staying the matter pending the final outcome of arbitration is the proper course even though all claims are referred to arbitration.[3] *See Smith v. Credit Acceptance Corp.,* No. 3:16-CV-1675, 2017 WL 105999, at *4 (M.D. Pa. Jan. 11, 2017) (staying action pending final outcome of arbitration in accordance with *Lloyd* and plaintiff's request to stay case).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and to compel arbitration (Doc. 27) is **GRANTED**. The parties are **COMPELLED TO ARBITRATE** all claims contained in the complaint and this case is **STAYED** pending the final outcome of arbitration proceedings. Because the arbitration may resolve all issues between the parties and make any

---

[3] Because the Court will direct the Clerk of Court to administratively close this action pending the final outcome of arbitration proceedings, the Court declines to address Dumont's request for punitive damages at this time.

further proceedings in this Court unnecessary, the Clerk of Court is directed to **CLOSE** this case administratively. If arbitration does not resolve all issues, then either part may move the Court to reopen the case.

      An appropriate Order follows.


**Dated: May 9, 2023**                    *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **Chief United States Magistrate Judge**